[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is before the court on remand from Mannweiler v.LaFlamme, 46 Conn. App. 525, 700 A.2d 57, cert. denied,243 Conn. 934, 702 A.2d 641 (1997). The plaintiffs, Gordon B. Mannweiler, Arminda P. Murtha, and William Boies, filed the operative complaint dated August 21, 1991, seeking a permanent injunction enjoining the defendants, Charles E. LaFlamme, Sr., Robert S. LaFlamme and David Apicella, from subdividing and building more than one single family residence on the defendants' property in violation of alleged restrictive covenants. All parties are owners of property in the Hop Brook (Hop Brook) Development, which was created when the J. H. Whittemore Company (Whittemore) recorded a subdivision map in the Naugatuck land CT Page 13411 records in Map Book 3, Page 1, in 1927. (Exhibit A).
Judge Pittman of the Superior Court in the judicial district of Waterbury denied the permanent injunctions. The plaintiffs appealed, "and the Appellate Court reversed the trial court's decision. Mannweiler v. LaFlamme, supra, 46 Conn. App. 544. The court, noting identical language in the first thirty lot conveyances in Hop Brook, found that there was a common scheme of development, and "conclude[d] . . ., on the basis of the clear language in the deeds [and] the subsequent actions of Whittemore and all of the grantees up to 1936, . . . that only one private residence may be built on each lot of Hop Brook." Id., 541. The court remanded the case for the trial court to consider the defendants' special defense relating to the Marketable Record Title Act. Id., 544. The defendants alleged that they were entitled to judgment pursuant to the provisions of the Marketable Record Title Act, General Statutes § 47-33b et seq., due to the plaintiffs' failure to preserve their claim, as required by General Statutes § 47-33f[1], by filing in the defendants' chain of title within the forty year period specified by the act.
"The Marketable Record Title Act is comprehensive in its approach to eliminating ancient and stale claims and defects, and shall be liberally construed and relied upon as a cure or remedy for such imperfections of title as fall within its scope so as to effect its legitimate purpose of simplifying and accelerating land title transactions." Connecticut Standards of Title, Standard 3.1 (1980). The defendants have a marketable record title pursuant to General Statutes § 47-33c.[2] "Such marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the chain of record title is formed; provided a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest. . . ." General Statutes § 47-33d.
The question before the court is whether the plaintiffs were required to file a notice of claim pursuant to General Statutes § 47-33f to notify the defendant of their interest in preserving a covenant to restrict building to one single family residence per lot in Hop Brook. The defendants claim that the plaintiffs have no interest created by the muniments by which the CT Page 13412 chain of record is formed and therefore should have notified the defendants of their claim.
The subdivision map recorded in the land records by Whittemore shows that Hop Brook consisted of six sections divided into fifty-two lots, not of equal size. The defendants purchased lot 1, section E, along with lot 2, lot 5 and a portion of lot 3, on June 8, 1989, from Edward B. and Donna R. Hyland by deed recorded in the Naugatuck land records at Volume 268, Page 467. (Defendants' Exhibit K). The defendants' statutory root of title for lot 1, section E relates back to the August 6, 1937 deed from the developer, Whittemore, to Lewis A. Dibble (Dibble), (Defendants' Exhibit F), and the deeds September 26, 1946, as amended on December 7, 1946 from Whittemore to Dibble[3]. (Defendants' Exhibits G-1, G-2). In May 1991, the defendants received approval from the Naugatuck planning and zoning commission to subdivide lot 1, section E, and to construct two houses on the property in addition to their existing home.
The plaintiffs allege that the subdivision is in violation of restrictions requiring one house per lot. The defendant claims that any restrictions on the land were created prior to the date of the root of title, 1937, and are thus null and void pursuant to General Statutes § 47-33e.[4] The pertinent provisions of the deeds are as follows.
The first thirty deeds of Hop Brook lots from Whittemore between 1927 and 1937 contained covenants and restrictions virtually identical to the following: "1. The aforesaid premises shall be occupied and used by the Grantee, his heirs and assigns, for private residential purposes only and not otherwise, and there shall at no time be erected or maintained thereon anything except one private residence for the use of one family only. . . . 3. Each and all the foregoing covenants and restrictions are for the mutual benefit of all persons who have derived or who shall derive title, directly or indirectly from the Grantor to any lot or lots shown on the Map hereinbefore referred to, and shall run with the land in favor of all lots shown on said Map, and any breach or threatened breach of any one or more or all of the covenants and restrictions aforesaid may be enjoined upon application of the Grantor, its successors and assigns, or any person or persons, who have derived or shall derive title directly or indirectly from the Grantor to any lot or lots shown on said map. " Mannweiler v. LaFlamme, supra,46 Conn. App. 527-28. CT Page 13413
The title transfer from Whittemore to Dibble for a portion of lot 1 and a portion of lot 5, section E, as recorded on August 6, 1937 in the Naugatuck land records at Volume 85, page 268, was subject to the following pertinent provisions: "1. The aforesaid premises shall be occupied and used by the Grantee, his heirs and assigns, for private residential purposes only and not otherwise, and there shall at no time be erected or maintained thereon anything except one private residence for the use of [o]ne family only, which private residence shall cost, exclusive of land, not less than $15,000.00, together with the necessary outbuildings thereto, or such outbuildings as may be desired by the Grantee, his heirs and assigns, for use in connection with his occupancy of the private residence located on the premises now owned by him and located to the West of the within described land. . . . 3. Each and all the foregoing covenants and restrictions are for the mutual benefit of all persons who have derived or who shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on the Map hereinbefore referred to, and shall run with the land in favor of all lots shown on said Map, and any breach or threatened breach of any one or more or all of the covenants and restrictions aforesaid may be enjoined upon the application of the Grantor, its successors and assigns, or any person or persons who have derived or shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on said Map, all subject, however, to the revocation of such covenants and restrictions as hereinafter set forth. 4. It is particularly agreed and understood that should the Grantee, his heirs or assigns, purchase further lands from the Grantor, or its successors, within Block `E', as shown on said Map, the foregoing covenants and restrictions may be revoked, in whole or in part, and others substituted therefor, by an agreement entered into by and between the Grantor, or its successors, and the Grantee, or his heirs or assigns, alone, and without the consent of any other person or persons." (Defendants's Exhibit F).
The title transfer from Whittemore to Dibble of the remainder of lot 1, section E, as well as a portion of lot 3, a portion of lot 5 and lot 4, as recorded in the Naugatuck land records at Volume 97, Page 377 on September 26, 1946, and as amended in the Naugatuck land records at Volume 97, Page 493 on December 7, 1946, was subject to the following pertinent restrictions: "1. All said premises shall be occupied and used by the Grantee, his heirs and assigns, for private residential proposed duly and not CT Page 13414 otherwise, and there shall at no time be erected or maintained thereon any thing except private residences, each for the use of the family only, which private residences shall each cost, exclusive of land, "not less than $15,000.00, together with the necessary outbuildings thereto, and except such outbuildings as may be desired by the Grantee, his heirs and assigns, for use in connection with the occupancy of a private residence located within said Section. No private residence shall be erected or maintained on a lot, having a street frontage of less than 100 feet or a total area of less than 15,000 square feet. 2. Said premises may be re-subdivided into building jots of dimensions other than those shown on said Map, provided, however, that no lot shall have a street frontage of less than 100 feet nor a total area of less than 15,000 square feet. . . . 3. Each and all the foregoing covenants and restrictions are for the mutual benefit of all persons who have derived or who shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on the Map hereinbefore referred to, and shall run with the land in favor of all lots shown on said Map, and any breach or threatened breach of any one or more or all of the covenants and restrictions aforesaid may be enjoined upon the application of the Grantor, its successors and assigns, or any person or persons who have derived or shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on said Map. " (Defendants' Exhibits G-1, G-2).
The Appellate Court determined that "[t]he attempt to reserve a power to revoke and amend the covenants in the 1937 deed is void and the subsequent modifications in deeds from Whittemore giving the grantees the right to subdivide are also void." Mannweiler v. LaFlamme, supra, 46 Conn. App. 543. The court "agree[d] with the plaintiffs that when, as here, the owner of a tract of land sells lots with restrictive covenants with the following language: `Each and all the foregoing covenants and restrictions are for the mutual benefit of all persons who have derived or who shall derive title, directly or indirectly from the Grantor to any lot or lots shown on the map hereinbefore referred to and shall run with the land in favor of all lots shown on said Map, and any breach or threatened breach of any one or more or all of the covenants and restrictions aforesaid may be enjoined upon application of the Grantor, its successors and assigns, or any person or persons who have derived or shall derive title directly or indirectly from the Grantor to any lot or lots shown on said map' and does not retain the right to rescind or amend them and does not provide a method for CT Page 13415 terminating or amending them, has no right to do so without the consent of all the then property (lot) owners. . . . In this case, the covenants were contained in the original deeds from Whittemore in the first thirty lots conveyed [between 1927 and 1937]. The covenants expressed in those deeds were uniform and are binding on all the owners of the lots of Hop Brook." Id., 542-53. Therefore defects in title exist because provisions of the root of title are void.
The Connecticut Standards of Title, Standard 3.8, offers the court direction in determining the effect of title defects and conflicting interest in the 40 year chain of title. "A Marketable Record Title is subject to conflicting interests in third parties or defects in the record chain of title which are created by either the recorded instrument which constitutes the root of title, or any subsequent interest in the chain of record title." Connecticut Standards of Title, Standard 3.8 (1980).
Example C of Comment 1 of the Connecticut Standards of Title, Standard 3.8[5] is particularly instructive. In Example C, the root of title deed contained a forged signature of the seller on the conveyance. Following two subsequent sales of the property, the property owner, with an unbroken chain of title for 40 years after the forged conveyance, had a marketable title subject to the owner of the property whose name was forged, because the marketable record title "can extinguish only those defects and interests which were created or came into existence prior to the statutory root of title." (Emphasis added.) Connecticut Standards of Title, Standard 3.8, Comment 1, Example C (1980).
The Appellate Court held that the 1937 deed contained a void provision that allowed the grantor and grantee to revoke restrictions without the agreement of other Hop Brook lot owners.Mannweiler v. LaFlamme, supra, 46 Conn. App. 543. The court also determined that the 1946 deed's provision attempting to revoke the restriction of one single family home per lot is void. Id. Thus, defects of title were created in the root of title deeds from 1937 and 1946. The defendants' title is subject to these defects because the defendants marketable record title cannot extinguish defects which were created in the statutory root of title. The plaintiffs' interest in enforcing the restriction prohibiting one house per lot was not extinguished because the provisions in the 1937 and 1946 deeds purporting to allow the defendant to subdivide are void. Thus, the defendants' title to lot 1, block E, is subject to the CT Page 13416 restriction of one home per lot without notice of the plaintiffs' claim pursuant to § 47-33f, and the plaintiff's request for a permanent injunction is granted.
JOHN R. CARUSO, J.